Filed 3/7/16  P. v. Gonzales CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

THE PEOPLE,

    Plaintiff and Respondent,

    v.

FRANK ANTHONY GONZALES,

    Defendant and Appellant.

F069892

(Super. Ct. No. BF150237A)

**OPINION**

-ooOoo-

### THE COURT[*]

APPEAL from a judgment of the Superior Court of Kern County.  Thomas S. Clark, Judge.

William Malloy, under appointment by the Court of Appeal, for Defendant and Appellant.

Office the State Attorney General, Sacramento, California, for Plaintiff and Respondent.

-ooOoo-

---

[*]Before Poochigian, Acting P.J., Peña, J., and Smith, J.

## *INTRODUCTION*

Frank Anthony Gonzales was convicted of several crimes after he robbed a restaurant and threatened to kill an employee if he called the police.  Appellate counsel did not identify any arguable issues.  Upon our inquiry, Gonzales identified three issues he believed entitled him to a new trial.

We find no merit to the issues identified by Gonzales.  Our review of the record leads us to agree with appellate counsel that there are no arguable issues.  Accordingly, we affirm the judgment.

## *FACTS AND PROCEDURAL HISTORY*

### *The information*

The first-amended information charged Gonzales with second-degree robbery (Pen. Code,[1] § 212.5, subd. (c)), making a criminal threat (§ 422), misdemeanor possession of drug paraphernalia (Health & Saf. Code, § 11364.1), and second-degree burglary (§ 460, subd. (b)).  Gonzales's lengthy criminal history resulted in numerous enhancements to these charges:  (1) a prior conviction that constituted a strike within the meaning of section 667, subdivision (b)-(i) (counts one, two, and three); (2) a prior serious felony conviction within the meaning of section 667, subdivision (a) (counts one and two); and (3) three convictions resulting in a prior prison term within the meaning of section 667.5, subdivision (b) (counts one, two, and three).  Prior to trial, Gonzales pled no contest to misdemeanor possession of drug paraphernalia.

### *The testimony*

The remaining counts arose out of a single incident.  Sixteen-year-old A.U. worked with his father at a family restaurant on the day in question.  He was in the

---

[1]Subsequent statutory references are to the Penal Code unless otherwise noted.

kitchen area when Gonzales walked into the restaurant.[2]  A.U. walked to the front counter of the restaurant to attend to the customer.  He asked Gonzales if he could help him, and Gonzales gave A.U. a note that read, "This is a robbery.  Stay quiet and give me all the money in the cash register and your personal cell phone.  I got a gun; so do as I ask."  A.U. asked Gonzales if he was serious, and Gonzales replied, "Oh, yeah."  A.U. never saw a gun but was in fear.  He opened the cash register and started gathering the money.  Gonzales became impatient and grabbed the money in A.U.'s hand and some more money that was still in the cash register.  Before leaving the restaurant, Gonzales then told A.U. to wait 20 minutes to call the police or he would come back and shoot A.U. in the head.

A.U. told his father J.U. they had been robbed, and J.U. called the police.  A.U. was taken in the squad car to another location where he identified Gonzales as the man who robbed him.

J.U. was working in the kitchen on the day in question when he noticed a man come into the restaurant and then leave the restaurant.  After the man left, A.U. told J.U. the restaurant had been robbed.  J.U. called the emergency operator to report the crime.  The recording of that conversation was played for the jury.

J.U. then went outside to see if he could locate the perpetrator.  He eventually saw him in front of another restaurant and followed him at a distance.  When a police officer arrived, J.U. pointed to Gonzales.  J.U. watched the officers arrest Gonzales and then returned to the restaurant.  J.U. identified a photograph of Gonzales as the perpetrator.  The officers returned the money that was stolen in the robbery after they arrested Gonzales.

---

[2]A.U. was not asked to identify Gonzales in court, but he did identify the individual depicted in a photograph (Exhibit 7A) as the perpetrator, and an officer confirmed the photograph was of Gonzales.

The People called several City of Bakersfield police officers who confirmed the above sequence of events and confirmed that Gonzales was the individual detained on the day in question and was also the individual positively identified by A.U. Finally, a phone call Gonzales made to his mother shortly after he was arrested was played for the jury. In the portion of the phone call played for the jury, Gonzales stated he tried to rob someone and clarified that he "got busted for robbery."

*Arguments, verdict, and sentencing*

The prosecutor argued the evidence overwhelmingly proved that Gonzales had robbed the restaurant and that he had threatened A.U. as Gonzales left. Defense counsel admitted Gonzales was there but claimed the prosecution had not met its burden of proof to establish either a robbery or a criminal threat because it had failed to establish that A.U. was in actual fear during the events.

The jury found Gonzales guilty as charged. In the bifurcated portion of the trial, the court found the enhancements true. The trial court sentenced Gonzales to the aggravated term of five years for the robbery (§§ 212.5, subd. (c) and 213, subd. (a)(2)), doubled because of the strike prior (§ 667, subds. (b)-(i)), added five years because Gonzales had a prior serious-felony conviction (§ 667, subd. (a)), and added two years for the two prior-prison-term enhancements (§ 667.5, subd. (b)), for a total term of 17 years. The sentences on the remaining felony counts were stayed pursuant to section 654, and the misdemeanor sentence was imposed consecutively.

## DISCUSSION

Appellate counsel filed a brief stating that, after he reviewed the file, he did not identify any arguable issues in this case. (*People v. Wende* (1979) 25 Cal.3d 436.) On March 9, 2015, this court sent a letter to Gonzales inviting him to identify any issues he wished to have this court address. Gonzales identified three issues he felt entitled him to relief.

4.

The first issue was "why [defense counsel] admitted to the jury in closing arguments that his client was guilty." We interpret Gonzales's letter to be a claim that defense counsel was ineffective.

A defendant is entitled to a new trial if he received ineffective assistance of counsel at trial. (*People v. Lagunas* (1994) 8 Cal.4th 1030, 1036.)

> "Establishing a claim of ineffective assistance of counsel requires the defendant to demonstrate (1) counsel's performance was deficient in that it fell below an objective standard of reasonableness under prevailing professional norms, and (2) counsel's deficient representation prejudiced the defendant, i.e., there is a 'reasonable probability' that, but for counsel's failings, defendant would have obtained a more favorable result. [Citations.] A 'reasonable probability' is one that is enough to undermine confidence in the outcome. [Citations.] [¶] Our review is deferential; we make every effort to avoid the distorting effects of hindsight and to evaluate counsel's conduct from counsel's perspective at the time. [Citation.] A court must indulge a strong presumption that counsel's acts were within the wide range of reasonable professional assistance.… Nevertheless, deference is not abdication; it cannot shield counsel's performance from meaningful scrutiny or automatically validate challenged acts and omissions. [Citation.]" (*People v. Dennis* (1998) 17 Cal.4th 468, 540-541.)

We reject Gonzales's claim because he cannot establish either element of an ineffective-assistance-of-counsel claim. During closing argument, defense counsel was faced with a daunting task. Gonzales had been positively identified by A.U. and J.U. as the perpetrator minutes after the robbery took place. He was found with cash stuffed into the pockets of his pants. The amount of cash recovered from Gonzales was the same amount that was stolen from the restaurant. Finally, Gonzales admitted to his mother he committed the robbery shortly after he was arrested.

In closing argument, defense counsel made a tactical choice to admit Gonzales was the perpetrator but attempted to argue he was not guilty of robbery or making criminal threats because the evidence did not prove that A.U. was in fear as a result of Gonzales's actions. Had he been successful, Gonzales would not have been convicted of

robbery, but of a lesser offense, and would have avoided any conviction on the criminal-threat count. Given the state of the evidence, we cannot say that defense counsel's tactical decision fell below an objective standard of reasonableness. Moreover, since the evidence overwhelmingly established Gonzales's guilt, even if defense counsel had not made this tactical choice, there is no possibility Gonzales would have obtained a better result. Therefore, there is no merit to this claim.

The second issue identified by Gonzales is a claim that the trial court abused its discretion when it denied his invitation to the trial court to dismiss his prior-strike conviction. (*People v. Superior Court (Romero)* (1996) 13 Cal.4th 497.) The trial court denied the request finding that Gonzales fell "squarely within" the Three Strikes legislative scheme.

The principles governing the trial court's exercise of discretion when a defendant invites it to dismiss a prior conviction are well established. Section 1385 permits the trial court to dismiss an action in furtherance of justice on its own motion. The Supreme Court held in *Romero* that this section permitted the trial court to dismiss a prior conviction that constituted a strike within the meaning of section 667, subdivisions (b)-(i), subject "to strict compliance with the provisions of section 1385 and to review for abuse of discretion." (*Romero, supra,* 13 Cal.4th at p. 504.) *Romero* also summarized the applicable principles for utilization of the authority granted trial courts in section 1385.

> "'The trial court's power to dismiss an action under section 1385, while broad, is by no means absolute. Rather, it is limited by the amorphous concept which requires that the dismissal be "in furtherance of justice." As the Legislature has provided no statutory definition of this expression, appellate courts have been faced with the task of establishing the boundaries of the judicial power conferred by the statute as cases have arisen challenging its exercise. Thus, in measuring the propriety of the court's action in the instant case, we are guided by a large body of useful precedent which gives form to the above concept.

"'From the case law, several general principles emerge. Paramount among them is the rule "that the language of [section 1385], 'in furtherance of justice,' requires consideration both of the constitutional rights of the defendant, and *the interests of society represented by the People,* in determining whether there should be a dismissal. [Citations.]" [Citations.] At the very least, the reason for dismissal must be "that which would motivate a reasonable judge." [Citations.]' [Citation.] 'Courts have recognized that society, represented by the People, has a legitimate interest in "the fair prosecution of crimes properly alleged." [Citation.] ""[A] dismissal which arbitrarily cuts those rights without a showing of detriment to the defendant is an abuse of discretion.' [Citations.]"' [Citation.]

"From these general principles it follows that a court abuses its discretion if it dismisses a case, or strikes a sentencing allegation, solely 'to accommodate judicial convenience or because of court congestion.' [Citation.] A court also abuses its discretion by dismissing a case, or a sentencing allegation, simply because a defendant pleads guilty. [Citation.] Nor would a court act properly if 'guided solely by a personal antipathy for the effect that the three strikes law would have on [a] defendant,' while ignoring 'defendant's background,' 'the nature of his present offenses,' and other 'individualized considerations.' [Citation.]

"A court's discretionary decision to dismiss or to strike a sentencing allegation under section 1385 is also reviewable. '[W]here the court's action lacks reason it may be invalidated upon timely challenge.' [Citation.] Section 1385 anticipates, and facilitates, appellate review with the requirement that '[t]he reasons for the dismissal must be set forth in an order entered upon the minutes.' [Citation.] 'The statement of reasons is not merely directory, and neither trial nor appellate courts have authority to disregard the requirement. It is not enough that on review the reporter's transcript may show the trial court's motivation; the *minutes* must reflect the reason "so that all may know why this great power was exercised."'" (*Romero, supra,* 13 Cal.4th at pp. 530-531.)

In *People v. Williams* (1998) 17 Cal.4th 148, the Supreme Court provided further guidance for ruling on an invitation to dismiss a prior conviction. "We therefore believe that, in ruling whether to strike or vacate a prior serious and/or violent felony conviction allegation or finding under the Three Strikes law, on its own motion, 'in furtherance of justice' pursuant to Penal Code Section 1385(a), or in reviewing such a ruling, the court in question must consider whether, in light of the nature and circumstances of his present

7.

felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies." (*Id.* at p. 161.)

We are not in this case reviewing a trial court's decision to strike a prior-conviction allegation, but its refusal to do so. In *People v. Carmony* (2004) 33 Cal.4th 367, 374 (*Carmony*), the Supreme Court confirmed that a trial court's refusal to exercise its discretion is reviewable for an abuse of discretion. Once again, the Supreme Court provided guidance for trial courts and appellate courts in addressing the issue.

> "In reviewing for abuse of discretion, we are guided by two fundamental precepts. First, '"[t]he burden is on the party attacking the sentence to clearly show that the sentencing decision was irrational or arbitrary. [Citation.] In the absence of such a showing, the trial court is presumed to have acted to achieve the legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review."' [Citations.] Second, a '"decision will not be reversed merely because reasonable people might disagree. 'An appellate tribunal is neither authorized nor warranted in substituting its judgment for the judgment of the trial judge.'"' [Citations.] Taken together, these precepts establish that a trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it.

> "Because 'all discretionary authority is contextual' [citation], we cannot determine whether a trial court has acted irrationally or arbitrarily in refusing to strike a prior conviction allegation without considering the legal principles and policies that should have guided the court's actions. We therefore begin by examining the three strikes law.

> "'[T]he Three Strikes initiative, as well as the legislative act embodying its terms, was intended to restrict courts' discretion in sentencing repeat offenders.' [Citation.] To achieve this end, 'the Three Strikes law does not offer a discretionary sentencing choice, as do other sentencing laws, but establishes a sentencing requirement to be applied in every case where the defendant has at least one qualifying strike, unless the sentencing court "conclud[es] that an exception to the scheme should be made because, for articulable reasons which can withstand scrutiny for

abuse, this defendant should be treated as though he actually fell outside the Three Strikes scheme.'" [Citation.]

"Consistent with the language of and the legislative intent behind the three strikes law, we have established stringent standards that sentencing courts must follow in order to find such an exception. '[I]n ruling whether to strike or vacate a prior serious and/or violent felony conviction allegation or finding under the Three Strikes law, on its own motion, "in furtherance of justice" pursuant to Penal Code section 1385(a), or in reviewing such a ruling, the court in question must consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies.' [Citation.]

"Thus, the three strikes law not only establishes a sentencing norm, it carefully circumscribes the trial court's power to depart from this norm and requires the court to explicitly justify its decision to do so. In doing so, the law creates a strong presumption that any sentence that conforms to these sentencing norms is both rational and proper.

"In light of this presumption, a trial court will only abuse its discretion in failing to strike a prior felony conviction allegation in limited circumstances. For example, an abuse of discretion occurs where the trial court was not 'aware of its discretion' to dismiss [citation], or where the court considered impermissible factors in declining to dismiss [citation]. Moreover, 'the sentencing norms [established by the Three Strikes law may, as a matter of law,] produce[] an "arbitrary, capricious or patently absurd" result' under the specific facts of a particular case. [Citation.]

"But '[i]t is not enough to show that reasonable people might disagree about whether to strike one or more' prior conviction allegations. [Citation.] Where the record is silent [citation], or '[w]here the record demonstrates that the trial court balanced the relevant facts and reached an impartial decision in conformity with the spirit of the law, we shall affirm the trial court's ruling, even if we might have ruled differently in the first instance' [citation]. Because the circumstances must be 'extraordinary … by which a career criminal can be deemed to fall outside the spirit of the very scheme within which he squarely falls once he commits a strike as part of a long and continuous criminal record, the continuation of which the law was meant to attack' [citation], the circumstances where no reasonable people could disagree that the criminal falls outside the spirit of the three

9.

strikes scheme must be even more extraordinary. Of course, in such an extraordinary case—where the relevant factors described in [*People v. Williams,*] *supra,* 17 Cal.4th 148, manifestly support the striking of a prior conviction and no reasonable minds could differ—the failure to strike would constitute an abuse of discretion." (*Carmony, supra,* 33 Cal.4th at pp. 376-378.)

*Carmony* makes clear that the refusal to strike a prior conviction will constitute an abuse of discretion in only rare cases. This is not such a case. Gonzales's argument is based on the assertion that his prior conviction should not be considered a serious or violent felony, and thus did not qualify as a prior-strike conviction. (§ 667, subds. (c) & (d).) The record shows the prior conviction was for residential burglary (§ 460, subd. (a)), which is a serious felony. (§ 1192.7, subd. (c)(18).) Gonzales acknowledges these facts but asserts that, because he broke into a detached garage, the crime he actually committed was second-degree burglary which is not a serious felony.

Neither the facts nor the law supports Gonzales's argument. First, the documents submitted by Gonzales to support his argument in the trial court establish he pled guilty to first-degree burglary as part of a plea agreement. He included with his invitation to the trial court a copy of the reporter's transcript from the plea agreement for the burglary, as well as a police report from that crime. The reporter's transcript establishes that Gonzales pled to residential (first-degree) burglary and was advised the conviction would constitute a strike within the meaning of section 667, subdivisions (b)-(i), and as a result he would receive additional punishment should he commit a felony in the future. By accepting the offer made by the People, Gonzales was sentenced to a low term for the burglary (two years) and a prior prison-term enhancement was dismissed. Because Gonzales obtained the benefit of his bargain, and his bargain included the provision that the burglary conviction would be a strike in future felony prosecutions, he is now prohibited from arguing the prior conviction is not a strike. (*People v. Segura* (2008) 44 Cal.4th 921, 930-931 [plea agreement a form of contract, the terms of which are binding on both parties].)

10.

Second, the police report submitted to the trial court by Gonzales shows that the detached garage into which he broke had been converted into a bedroom and was occupied at the time of the burglary. As such, it was a residence within the meaning of section 460, subdivision (a). (*People v. Cruz* (1996) 13 Cal.4th 764, 776 [inhabited dwelling is place used as sleeping quarter and occupant intends to continue to do so in future].)

Finally, as the trial court observed, Gonzales falls squarely within the legislative scheme for the three strikes law. Section 667, subdivision (b), declares the Legislature's intent to provide increased punishment for those convicted of a felony and who had previously been convicted of a prior serious or violent felony. Gonzales had been convicted of a serious felony and had an extensive criminal history beginning in 1989 and continuing up until the current conviction. While most of the convictions were for misdemeanors, the probation report indicates there were at least three felony convictions that resulted in commitments to the Department of Corrections. The report also indicates Gonzales violated his parole or probation on numerous occasions. This report provides no evidence to suggest Gonzales fell outside the three strikes legislative scheme. Accordingly, the trial court acted well within its discretion when it refused to dismiss the prior-strike conviction.

The third issue identified by Gonzales is that the "robbery does not bare the elements of force or threat by force." We interpret Gonzales's letter to assert there is not substantial evidence to support the robbery conviction because there is no evidence A.U. was in fear when he gave Gonzales the money from the cash register, the same argument defense counsel made in closing argument.[3]

---

[3]We reject Gonzales's assertion the prosecutor referred to the crime as a theft during her rebuttal argument. No citation to the record is provided, and a review of the closing argument unequivocally confirms the prosecutor argued A.U. was in fear and therefore the crime was a robbery.

To assess the evidence's sufficiency, we review the whole record to determine whether *any* rational trier of fact could have found the essential elements of the crime or special circumstances beyond a reasonable doubt. (*People v. Maury* (2003) 30 Cal.4th 342, 403.) The record must disclose substantial evidence to support the verdict—i.e., evidence that is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. (*Id.* at p. 396.) In applying this test, we review the evidence in the light most favorable to the prosecution and presume in support of the judgment the existence of every fact the jury could reasonably have deduced from the evidence. (*People v. Boyer* (2006) 38 Cal.4th 412, 480, superseded by statute [§ 29.4] on other grounds.) "Conflicts and even testimony [that] is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends. [Citation.] We resolve neither credibility issues nor evidentiary conflicts; we look for substantial evidence. [Citation.]" (*Maury*, *supra*, at p. 403.) A reversal for insufficient evidence "is unwarranted unless it appears 'that upon no hypothesis whatever is there sufficient substantial evidence to support'" the jury's verdict. (*People v. Bolin* (1998) 18 Cal.4th 297, 331.)

The record provides ample evidence that A.U. was in fear when Gonzales robbed him. For our purposes, it is sufficient to note that A.U. testified he was afraid when he read the note given to him by Gonzales which stated Gonzales had a gun and which demanded the money in the cash register. Although there is additional evidence in the record on this element of the crime, this testimony is sufficient by itself to support the judgment.

We have reviewed the entire record and agree with appellate counsel there are no arguable issues in this case. This was an uncomplicated prosecution based on a single act. The identification of Gonzales was unequivocal, and the undisputed facts established

12.

each element of the charged crimes.  The jury was properly instructed and the trial court acted well within its sentencing discretion.

## *DISPOSITION*

The judgment is affirmed.